UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

PHENIDE JOSEPH and GEORGE JOSEPH

                     Plaintiffs,

        v.

OCWEN FINANCIAL CORPORATION; OCWEN LOAN SERVICING, LLC; and JOHN DOE #1 through JOHN DOE #10, representing any and all owners, trustees, officers, affiliates, individuals, supervising agencies, and corporations, having or claiming an interest in this present controversy,

                     Defendants.

**MEMORANDUM AND ORDER**

18-CV-4971 (LDH) (LB)

---

LaSHANN DeARCY HALL, United States District Judge:

Plaintiffs Phenide Joseph and George Joseph, proceeding pro se, bring the instant action against Defendants Ocwen Financial Corporation ("OFC"), Ocwen Loan Servicing LLC ("OLS") (collectively, ("Ocwen")), and John Does 1–10, asserting claims for alleged violations of the Real Estate Settlement Procedures Act ("RESPA") and the Fair Debt Collection Practices Act ("FDCPA"). Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety.

## BACKGROUND[1]

Plaintiffs are the mortgagors of a loan serviced by Defendant OLS. On October 12, 1989, Plaintiff Phenide Joseph, and her husband Karnest Joseph (collectively the "Josephs") executed a mortgage and note with Citibank, N.A. (Compl. at 3, ECF No. 1.) In August 1997, the Josephs and Citibank, N.A. engaged in litigation in the Supreme Court of New York, County of Queens

---

[1] The following facts are taken from the complaint and are assumed to be true for purposes of deciding the instant motion. Citations to the complaint refer to the pagination assigned by the Court's ECF system. The complaint includes several allegations regarding prior litigations between the parties and their predecessors in interest. Because these litigations are not relevant to the Court's determination, many of Plaintiffs' allegations have been omitted.

regarding the amount owed on the mortgage. (*Id*. at 4.) At some point during this litigation, an appointed referee issued a final report indicating that the amount owed and due on the mortgage was $165,243.55. (*Id*. at 3.) On April 18, 1996, the court issued an order confirming the referee's report. (*Id*.; *see also* Compl. Ex. 3.) On May 29, 1997, Citicorp Mortgage, Inc., on behalf of Citibank, N.A., assigned the mortgage to Ocwen Financial Standard Bank ("Ocwen FSB"). (Compl. at 3.)

On August 29, 1997, the Josephs and Ocwen FSB executed a Modification Agreement. (*Id*. at 4.) The Modification Agreement indicated that the Josephs owed a total amount of $201,344. (*Id*.; Compl. Ex. 4.) In or about August 1997, the Josephs wired $50,000 to Ocwen FSB in an attempt to reduce the amount owed in arrears. (Compl. at 5.) Plaintiffs allege that "[t]he Modification Agreement did not specifically explain how the $50,000 was to be applied" but that, based on correspondence with Defendants, the funds were inappropriately applied. (*Id*.) In or around June 2000, Karnest Joseph died, and his son, Plaintiff George Joseph, became the administrator of his estate. (*Id*.; *see also* Compl. Ex. 4-A.) Plaintiffs promptly notified Ocwen FSB of Karnest's death and Plaintiff George Joseph's appointment as administrator of Karnest's estate. (Compl. at 4.)

In June 2002, Defendant OLS began servicing Plaintiff's loan. (*Id*. at 1.) On April 19, 2005, Defendant OLS faxed Plaintiff Phenide Joseph a Forbearance Agreement which modified the Modification Agreement, but did not change the maturity date or amortization schedule associated with the loan. (*Id*. at 7; *see also* Defs' Mot. Ex. 12.) Plaintiff Phenide Joseph was the only signatory to the Forbearance Agreement. (*Id*. 7-8.)

At some point prior to June 2014, Plaintiffs' account became past due. According to the complaint, in or about June 2014, Plaintiffs requested information from Defendant OLS

regarding the amount they needed to pay to reinstate their loan.  (*Id*. at 9.)  On July 18, 2014, Defendant OLS provided Plaintiffs with a reinstatement quote which indicated that Plaintiffs were required to pay $1,945.20 in order to reinstate their loan.  (*Id*.)  In or about March 2015, Plaintiffs sent another letter to Defendant OLS again requesting information regarding the amount necessary to reinstate their loan.  (*Id*.)  On April 20, 2015, Defendant OLS sent Plaintiffs a reinstatement quote which indicated that Plaintiffs were required to pay $1,380.73[2] in order to reinstate their loan.  (*Id*.)  In or about May 2015, Plaintiffs again requested information from Defendant OLS regarding the payment amount necessary to reinstate their loan.  (*Id*.)  On or about June 11, 2015, Defendants waived $6,840 worth of foreclosure fees from Plaintiffs' account.  (*Id*.; *see also* Compl. Ex. 4-E.)  On June 23, 2015, Defendants responded to Plaintiffs' May 2015 letter with a reinstatement quote which indicated that Plaintiffs were required to pay $1,380.75[3] to reinstate their loan.  (Compl. at 9.)  Plaintiffs allege that as of February 7, 2017, they had not received a payment reconciliation history nor had their mortgage been reinstated.  (*Id*. 6–7.)  There is no allegation that Plaintiffs ever paid any quoted reinstatement amount.

According to the complaint, Plaintiffs paid Defendants an additional $130 each month for approximately 12 years from 2005 until March 2017 in order to make their account current pursuant to the Forbearance Agreement.  (*Id*. at 8.)  Plaintiffs allege that, in light of their fulfillment of their responsibilities under the Forbearance Agreement, their loan should have been reinstated in March 2017, but it was not.  (*Id*.)  At some point between February and

---

[2] Plaintiffs allege that Defendant indicated that a total of $11,969.42 was necessary for reinstatement, however, Defendant's April 20, 2015 letter which was attached to and incorporated by reference explicitly states that although $10,588.69 was the total of "other amounts outstanding and due," only $1,380.73 was necessary for reinstatement. (Compl. Ex. 4-C.)

[3] Plaintiffs allege that Defendant indicated that a total of $4,941.45 was necessary for reinstatement, however, Defendant's April 20, 2015 letter explicitly states that although $4,941.45 was the total of "other amounts outstanding and due", only $1,380.73 was necessary for reinstatement. (Compl. Ex. 4-D.)

November 2017, Plaintiffs sent Defendants a letter renewing their request for a payment reconciliation history and reinstatement of their loan. (*Id*. at 7.) Defendants responded by letter dated November 10, 2017. (*Id*. at 4–5; Compl. Ex. 5.) Plaintiffs allege that they sent several letters to Defendant OLS requesting information regarding the total amount they owed in arrears and the amount that they were required to remit in order to reinstate their loan. (Compl. at 7.)

On or about April 12, 2018, Plaintiffs sent Defendant OLS a letter which indicated several errors related to Plaintiffs' loan, requested documents related to the validation of Plaintiffs' debt, and indicated that Plaintiffs disputed the debt owed to Defendant OLS. (Compl. at 10.) By letter dated June 13, 2018, Defendant OLS responded to Plaintiffs April 12, 2018 letter indicating, *inter alia*, that Defendant OLS was servicing Plaintiffs' loan on behalf of a trust, did not have information related to the servicing transfer of Plaintiffs' loan, and could not respond to inquiries related to occurrences prior to the date on which it began servicing Plaintiffs' account. (*Id*.) On or about August 7, 2018, Plaintiff Phenide Joseph received a letter from Defendants indicating that she may be at risk of foreclosure. (Compl. Ex. 10.)

Plaintiffs allege damages in the amount of $132,149.76. (*Id*. at 12.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of defendants' liability for the alleged misconduct. *Id*. While this standard requires more than a "sheer possibility" of defendants' liability, *id*., "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss.

4

*Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id.* (citations omitted).

Moreover, where, as here, plaintiffs are proceeding pro se, their pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 55 U.S. 89, 94 (2007) (per curiam)).

## DISCUSSION

### A. Plaintiffs' RESPA Claim

The Real Estate Settlement Procedures Act ("RESPA") is a "consumer-protection statute [which] imposes short timeframes for mortgage servicers to respond to potentially detailed inquiries." *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181 (2d Cir. 2014). Under RESPA, a loan servicer who receives a qualified written request ("QWR") from a borrower for information relating to the servicing of his or her loan, must provide a written response acknowledging receipt of the borrower's request within 5 days, excluding weekends and holidays. 12 U.S.C. § 2605(e)(1)(A). A QWR is a "correspondence that identifies a borrower's account and 'includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.'" *Mack v. ResCap Borrower Claims Trust*, 678 F. App'x 10, 14 (2d Cir. 2017)

(summary order) (quoting *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181 (2d Cir. 2014)). Not later than 30 days after receipt of a QWR, a loan servicer must take action related to the concerns raised by the borrower. 12 U.S.C. § 2605(e)(2). The servicer must either: (1) make appropriate corrections to the borrower's account; or, (2) after conducting an investigation, provide the borrower with a written explanation that includes contact information of an individual employed by the servicer who may assist the borrower, and either (a) a statement of reasons for which the servicer believes the borrower's account is correct, (b) the information requested by the borrower, or (c) an explanation as to why the information requested by the borrower is unavailable or cannot be obtained by the servicer. *Id*.

Relevant here, a three-year statute of limitations applies to all claims under section 2605. *Reinhart v. CitiMortgage, Inc.*, 677 F. App'x 17, 18 (2d Cir. 2017) (summary order) ("a plaintiff must allege that any action based upon a violation of these requirements must be commenced within three years of such violation."). The original complaint was in this case filed on August 31, 2018. Accordingly, Plaintiffs' letters dated July 18, 2014, March 2015, and May 2015 are untimely. The "several letters" Plaintiffs allegedly sent to Defendants after February 2017 are presumably timely. (*See* Compl. at 7.) However, those letters are not actionable for a different reason.

"To plead a claim under the RESPA, plaintiff must offer proof either by attaching the letter or pleading with specificity such facts—such as when the letter was sent and to whom it was directed, why it was sent, and the contents of the letter—that the Court may determine if the letter qualifies as a [request for information] or notice of error." *Jackson v. Caliber Home Loans*, No. 18-CV-4282, 2019 WL 3426240, at *2 (E.D.N.Y. July 30, 2019) (citing *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 538 (E.D.N.Y. 2015)). Because Plaintiffs have

6

not attached the "several letters" sent after February 2017 or pleaded facts detailing the contents of those letters, the Court cannot ascertain the sufficiency of those letters to determine whether they are QWRs. Conversely, Plaintiffs have attached their April 12, 2018 letter, in which they identified several alleged errors with the servicing of their loan and requested information regarding the servicing of their loan (Compl., Ex. 7.). Plaintiffs' April 12, 2018 letter therefore qualifies as a valid QWR to which Defendant OLS was required to reply under RESPA. Importantly, Plaintiffs do not allege that Defendant OLS failed to comply with its obligations under RESPA. To the contrary, Plaintiffs allege that Defendant OLS timely acknowledged and responded to Plaintiffs' April 12, 2018 QWR. (Compl. at 11–12.) Plaintiffs' claims are instead premised on Defendant OLS's alleged failure to correct Plaintiff's loan account, failure to comply with Plaintiffs' demands, and continuous denial of responsibility for the issues related to Plaintiffs' loan. (*Id*. at 12.) These concerns are not actionable under RESPA. *See Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, No. 08-CV-019, 2009 WL 1748743, at \*8–9 (N.D.N.Y. June 19, 2009), *aff'd*, 421 F. App'x 97 (2d Cir. 2011) (Section 2605 requires the loan services to investigate and provide a written explanation that includes "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer [.]")

In any event, even if the Court were to find that Defendant OLS's responses were somehow violative of RESPA, Plaintiffs' claim would nonetheless fail as a violation of a defendant's statutory duty alone is not sufficient to state a REPSA claim. *See Gorham-DiMaggio*, No. 08-CV-019, 2009 WL 1748743, at \*8–9. Instead, to defeat a motion to dismiss a claim under RESPA, a plaintiff must sufficiently allege that he or she suffered actual damages as a result of the defendant's failure to comply with § 2605; and, in the case of a pattern or practice

7

of noncompliance with § 2605, that the plaintiff is entitled to statutory damages. *See* 12 U.S.C. § 2605(f); *Jackson v. Caliber Home Loans*, No. 18-CV-4282, 2019 WL 3426240, at *7 (E.D.N.Y. July 30, 2019) (quoting *Gorbaty v. Wells Fargo Bank, N.A.*, 2012 WL 1372260, at *3 (E.D.N.Y. Apr. 18, 2012) ("*Gorbaty I*")). Moreover, "simply saying that, for example, the servicer's failure to respond to a QWR caused damages without specifying how those damages were caused," is not enough to survive a motion to dismiss. *In re Griffin*, No. 10-22431, 2010 WL 3928610, at *4 (Bankr. S.D.N.Y. Aug. 31, 2010). That is, it is well settled that, in the Second Circuit, a plaintiff must sufficiently allege that his damages were proximately caused by the defendant's violation of RESPA. *Gorbaty*, No. 10-CV-3291, 2012 WL 1372260, at *5 (collecting cases). Fatal to their claim, Plaintiffs have failed to comport with this requirement.

With respect to actual damages Plaintiffs allege only that they will in the future be required to pay their mortgage for an additional eight years totaling $132,149.76. (Compl. at 12.) In other words, Plaintiffs' alleged damages have not been incurred or suffered. Moreover, even if these damages had been incurred, Plaintiffs' claim would nonetheless fail because Plaintiffs have not sufficiently alleged how those damages were caused by any RESPA violation by Defendants.

**B.     Plaintiffs' FDCPA Claims**

Construing the complaint liberally, Plaintiffs allege that Defendant OLS violated the FDCPA by continuing its foreclosure efforts after Plaintiffs sent their April 12, 2018 letter, and by misrepresenting the status of and amount owed on Plaintiffs' loan. (*Id*. at 14.) "The FDCPA aims to 'eliminate abusive debt collection practices by debt collectors' and to 'protect consumers against debt collection abuses.'" *Quarashi v. Ocwen Loan Servicing, LLC*, 760 F. App'x. 66, 68 (2d Cir. 2019) (summary order); *see also* 15 U.S.C. § 1692(e). In the Second Circuit, however,

8

"[a] loan servicer acting on behalf of the owner of a debt obligation is not a debt collector unless it began its servicing duties after the loan entered default status." *Quarashi*, 760 F. App'x at 68 (*citing Roth*, 756 F3d 178, 183 (2d Cir. 2014); *see also* 760 F. App'x at 68 (*quoting* 15 U.S.C. § 1692(a)(6)(F) (stating that the FDCPA excludes from its definition of debt collector "any person collecting or attempting to collect any debt owed . . . or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person.")). "Therefore, a complaint that 'does not allege that [a servicer] acquired [the plaintiff's] debt after it was in default fails to allege that [the servicer] qualifies as a debt collector under the FDCPA.'" *Roth v. CitiMortgage Inc.*, 756 F3d at 183.

      Here, Plaintiffs allege that Defendant OLS is a loan servicer and wholly-owned subsidiary of Ocwen Financial. (Compl. at 1–2.) Conspicuously absent from Plaintiffs' complaint, however, is any allegation that Defendant OLS began servicing Plaintiffs' loan after their loan was in default. To the contrary, a review of the complaint reveals that Defendant OLS had been servicing Plaintiffs' loan prior to the default which prompted the August 12, 2018 foreclosure. (*see id*.) Because Plaintiffs have not sufficiently alleged that Defendants are debt collectors under the FDCPA, Plaintiffs' FDCPA claims must be dismissed. *Macias v. Ocwen Loan Servicing, LLC*, 718 F. App'x 32, 35 (2d Cir. 2017) (stating that the plaintiff failed "to state a claim under the Fair Debt Collection Practices Act ("FDCPA") against [the defendant] because . . . he d[id] not allege that his home loan was already in default at the time [the defendant] became the servicer of his mortgage and therefore d[id] not allege that [the defendant was] a 'debt collector' under the FDCPA.")

9

## CONCLUSION[4]

For the foregoing reasons, Defendants' motion to dismiss for failure to state a claim is GRANTED and the complaint is dismissed in its entirety.

SO ORDERED.

Dated: Brooklyn, New York  
      March 30, 2020

/s/ LDH  
LaSHANN DeARCY HALL  
United States District Judge

---

[4] On July 19, 2019, one week before the parties' fully-briefed motion was due to be filed, Plaintiffs filed a second amended complaint. (ECF No. 23.)  The Court construes Plaintiffs' filing of a second amended complaint as a request for leave to amend.  Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires."  Plaintiffs' request to amend the complaint is therefore GRANTED.  However, having reviewed Plaintiffs' second amended complaint, the Court finds that it does not cure the deficiencies identified herein.  On this basis, Plaintiffs are directed to show cause within 60 days of this memorandum and order as to why the second amended complaint should not be dismissed for the reasons outlined above.